IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HOUSTON CASUALTY COMPANY,

    Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and DOES 1 through 30,

    Defendants.

No. C 18-06147 WHA

**ORDER RE MOTION FOR RECONSIDERATION AND ADMINISTRATIVE MOTION TO SEAL**

## INTRODUCTION

In this insurance action, a non-party moves for reconsideration of a discovery dispute order. Defendant moves for joinder in the motion. For the reasons stated below, reconsideration is **DENIED**.

## STATEMENT

Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania, was the primary insurer for Anderson Hay & Grain, an exporter of hay and straw products. Plaintiff Houston Casualty Company had the excess (Compl. ¶¶ 4, 8, 9).

National Union issued a primary policy with a general aggregate limit of $10 million, an each-occurrence limit of one million dollars, and an each-location aggregate sub-limit of two million dollars to Anderson Hay, effective May 2014 to May 2015. Houston Casualty issued a form excess policy to Anderson Hay, effective May 2014 to May 2015 (\*\*).

In July 2014, Bartolo Flores collapsed while delivering alfalfa to the premises of Anderson Hay. He filed suit in Los Angeles Superior Court. National Union agreed to defend and indemnify Anderson Hay in the action. Anderson Hay retained Acker & Whipple as counsel for that underlying action. Houston Casualty requested it be included on all correspondence related to the underlying action. In August 2018, the jury returned a verdict of $3.5 million against Anderson Hay in the underlying action (*id.* ¶¶ 8–11, 14, 19).

Herein, Houston Casualty asserts National Union unreasonably refused to settle the underlying action within its policy limits and accordingly alleges the following claims for relief: (1) equitable subrogation, (2) unjust enrichment, and (3) declaratory relief (*id.* ¶¶ 24–49 ).

All agree that advice given by the law firm to National Union is discoverable, the privilege between them having been waived. The instant dispute concerns a July 31 email that was initially produced but later clawed back on the theory that it had never been sent to National Union. In October 2019, Houston Casualty filed a discovery motion regarding this email, written by attorney Stephen Acker of Acker & Whipple, providing an evaluation of the underlying action. Non-party Acker & Whipple had voluntarily produced the email to all parties during discovery. Later, however, Acker & Whipple stated that it had unintentionally produced the email, that it was protected by the work-product rule on the ground that it expressed Mr. Acker's opinions and mental impressions, and that the privilege had not been waived. The parties do not dispute that a similar discoverable email dated August 2, 2017, providing an evaluation of the action was sent to National Union.

National Union did not appear at the hearing for the discovery motion. An order issued in favor of Houston Casualty. The order was stayed for seven calendar days, allowing Acker & Whipple or any other party to seek emergency appellate relief. On October 30, Acker & Whipple moved to stay enforcement of the October 23 order pending its motion for reconsideration, which it filed on October 31. National Union moved for joinder. The Court stayed its October 23 order pending resolution of the motion for reconsideration, but stated the email in question could be used in the deposition of any Acker & Whipple attorney and in the

2

deposition of plaintiff's expert. This order follows full briefing and oral argument (Dkt. Nos. 40, 43–45, 49, 52–54).

**ANALYSIS**

Motions for reconsideration are governed by Civil Local Rule 7-9, which requires the movant to show one of the following:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Acker & Whipple contends there are material differences in facts and also that the Court committed a manifest failure in its ruling.

### 1. MANIFEST FAILURE.

The work-product doctrine protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." FRCP 26(b)(3); *Admiral Ins. Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir.1989). These documents may only be discovered and admitted upon demonstration of "substantial need [for] the materials" and "undue hardship [in obtaining] the substantial equivalent of the materials by other means." FRCP 26(b)(3). Work product may also be produced and admitted if the mental impressions are at issue in the case. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992).

Acker & Whipple first argues that the Court applied the wrong legal standard in determining when the work-product doctrine is waived. Specifically, it contends that waiving attorney-client privilege is different than waiving the work-product doctrine. It then states that because the email was allegedly never communicated outside of the firm, it did not waive the

3

work product doctrine for that document. The Court found, based on the documents and materials provided by the parties for the October 23 discovery hearing, that, among other things, a jury could determine that the email had indeed been sent to National Union, and that the work-product doctrine had thus been waived. The Court did not manifestly fail to apply the proper legal standard nor consider material facts presented.

Relatedly, Acker & Whipple further argues the Court improperly applied a presumption against it in determining the email could have been sent to National Union. The burden is on the party claiming work-product privilege to show that the privilege exists. Once that party demonstrates such, the burden then shifts to the other party to overcome the privilege. During the underlying discovery dispute Acker & Whipple argued without any evidence that "the email was not transmitted outside the law office" (Reply 11). Houston Casualty then provided evidence demonstrating otherwise, specifically that the document had been produced during discovery and that the face of the email showed that it could have been sent outside the firm (*i.e.* the email was addressed to "Ray"). The Court did not start with the presumption that the email had been transmitted, but based its ruling on the information presented by the parties in the course of the discovery dispute.

### 2. MATERIAL DIFFERENCE IN FACTS.

New material facts are generally those that either (1) arose after the original decision; or (2) were not know and could not have been known through reasonable diligence at the time of the original decision. Acker & Whipple has now provided a declaration from Bruce Pixley, a forensic expert, who states an opinion that National Union never received the email in question. It has also provided declarations from Ray Adams and Patrick Fuller (a National Union representative) who both state National Union did not receive the email in question from Acker & Whipple. Acker & Whipple contends that these statements provide new material facts because the issue of whether the document had been transmitted was raised for the first time by the Court at the discovery dispute hearing, and not briefed by Houston Casualty, meaning Acker & Whipple was not prepared to provide the aforementioned declarations.

4

These declarations are insufficient to grant Acker & Whipple's motion. True, Houston Casualty did not explicitly raise the issue of the transmittal of the document to National Union, but this does not excuse Acker & Whipple from failing to investigate that obvious line of argument prior to the hearing. The face of the email central to the dispute could, as the Court found, allow the reasonable conclusion it had been transmitted to "Ray" (the client), and Acker & Whipple failed to present evidence at the hearing or in its prior briefing that suggested otherwise. Whether the email had been sent to "Ray" (the client) was a point facing the parties prior to the October 23 hearing. Acker & Whipple has now merely presented evidence that the email had not been transmitted to National Union, something it should have already investigated and been prepared to address at the October 23 hearing. A motion for reconsideration should not be based on evidence that could have been presented at the original hearing concerning an obvious issue.

In a case like this, to determine any bad faith, the jury will need to analyze the information that was in fact communicated to National Union. In a case like this, the record may be inconclusive and leave open the possibility that more information was communicated than the insurer is willing to admit. In that circumstance, attorney work-product on point can help inform the jury as to what was actually communicated on the subject. For example, in *Mushroom Associates v. Monterey Mushrooms, Inc*., Judge Hamilton found that mental impression work product should be produced in a situation where such work product was relevant to a party's advice of counsel defense. C 91-01092 TEH (PJH), 1992 WL 442892, at *5 (N.D. Cal. May 19, 1992).

Here, an important phone conversation occurred between National Union and Acker & Whipple and at least one of the attendees couldn't remember any details of the advice regarding the mediator's proposal. Stephen Acker stated the following at his deposition:

> Q: Take a look at Exhibit 11, please.
>
> A: I have Exhibit 11 here, yes.
>
> Q: First line (as read): "Ray, following the telephone call you and I had last Thursday in response to my request for instructions on responding to a settlement communication from the mediator, Judge Romero." Do you see that?

5

| | |
|---|---|
| A: | I do. |
| Q: | Do you have any recollection of what you and Ray talked about on the Thursday before August 8th? |
| A: | No, I don't. |

The contemporaneous internal work product memorandum could be evidence from which the jury could reasonably conclude the viewpoint in the work-product was indeed orally communicated in the phone conversation.

True, we now have a declaration from Ray Adams with a categorical assertion that no attorney recommendation of the mediator's proposal of $950,000 was ever communicated to him by Acker & Whipple. Nevertheless, at least three circumstances suggest that his memory may have failed him. *First,* the email is addressed to "Ray," leading to the reasonable conclusion that it had thus been sent to Ray. *Second*, at oral argument for the discovery dispute, counsel for Acker & Whipple stated the email had been stored in a folder of materials that had indeed gone to the client. *Third,* as stated above, at his deposition, when asked about a telephone call between himself and Ray on August 8, Stephen Acker stated he had no recollection of the call (Myers Decl., Ex. A at 149–50), leaving open the possibility that the information in the July 31 email was communicated during the phone call.

The record is thus inconclusive as to whether the recommendation was ever communicated to National Union, and accordingly, the email ought to be discoverable. The motion for reconsideration is thus **DENIED**.

At our trial in a few months, the undersigned is inclined to allow Houston Casualty to use the email at trial, subject to any motions in limine.

### 3. ADMINISTRATIVE MOTION TO SEAL.

In connection with its reply in support of its motion for reconsideration, Acker & Whipple has filed an administrative motion to seal two documents: (1) a portion of Leslie Burnet's deposition testimony and (2) the email in question dated July 31, 2017, with an attachment of a deposition summary memo. Given the holding for the motion for

6

reconsideration and because good cause has not been shown, the administrative motion to seal is **DENIED**.

The documents shall be filed publicly on the docket by **JANUARY 7 AT NOON.** Until then, however, the documents and this order will remain under seal and this order shall be **STAYED** until **JANUARY 7 AT NOON** to allow any party to seek emergency relief from our court of appeals.

**IT IS SO ORDERED.**

Dated: December 11, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE