UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HOUSTON CASUALTY COMPANY,

    Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al.,

    Defendants.

No. C 18-06147 WHA

**ORDER RE MOTION FOR SUMMARY JUDGMENT, ADMINISTRATIVE MOTION TO FILE UNDER SEAL, AND VACATING HEARING**

**INTRODUCTION**

In this insurance action, this order finds that the primary carrier breached its duty of good faith and fair dealing by refusing to settle within policy limits or so a reasonable jury could find based on this record.

**STATEMENT**

Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania, was the primary insurer for Anderson Hay & Grain, an exporter of hay and straw products. Plaintiff Houston Casualty Company had the excess. National Union's primary policy had a general aggregate limit of $10 million, an each-occurrence limit of one million dollars, and an each-location aggregate sub-limit of two million dollars, effective May 2014 to May 2015. In July 2014, Bartolo Flores collapsed while delivering alfalfa to the premises of Anderson Hay. He filed suit in Los Angeles Superior Court. National Union appointed Acker & Whipple as defense counsel (Compl. ¶¶ 4, 8–11, 14, 19).

In August 2016, Acker & Whipple evaluated the potential verdict of the case to be $250,000 to $300,000 with a settlement range of $30,000 to $40,000 (Opp. Exh. D). In early December 2016, Acker & Whipple informed National Union that the case could potentially be settled for $50,000. Ray Adams, a representative for National Union, authorized the offer, which Flores rejected. In late December 2016, Acker & Whipple provided National Union with a pre-trial report that estimated the potential verdict of the case to be between $325,000 to $400,000 before certain deductions, with judgment against Anderson Hay between $165,000 to $200,000 (Br. Exh. 15–17). All of these amounts fell below the one million dollar policy limit.

In March 2017, however, Acker & Whipple informed Houston Casualty of the potential for exposure in excess of the primary limits. It still estimated the potential verdict of the case to be at most between $325,000 to $400,000 (Opp. Exh. D). At that time, Acker & Whipple recommended making an offer of settlement to Flores of up to $100,000. The parties attended mediation on March 27. By the end of the mediation, Flores made an offer of three million dollars. Acker & Whipple told National Union, however, that "even if liability were clear, [it] would not be worth more than $1 million." The mediator stated the "full value of the plaintiff's case is 6 figures and not 7 figures. $500K might be full value," and made a proposal of $950,0000. Acker & Whipple advised that that amount was "too high" (Br. Exh. 18, 21, 22, 25, 28).

On July 28, Acker & Whipple took the deposition of Jennie McNulty, Flores's economic expert. Based thereon, an Acker & Whipple email dated July 31 stated it estimated the verdict range "will be as high as $3.2 million . . . At this time, we believe an offer to meet the mediator's proposal of $950,000 would be appropriate." The parties disagree as to whether this belief was ever communicated to National Union, but as a previous order has already found, a reasonable jury could find that it either was communicated or that the information contained therein was communicated verbally (Dkt. No. 86).

On August 2, Acker & Whipple sent an email to National Union stating the probable verdict range would be between $325,000 and $400,000 (Br. Exh. 27). On August 3, a phone call took place between attorney Stephen Acker of Acker & Whipple and Ray Adams of

National Union. Ray Adams, at his deposition, did not recollect the substance of the call (so the July 31 email may particular evidentiary force as to what was said) (Opp. Exh. D). That same day, National Union made an offer of $200,000 to Flores. On or before August 8, Flores made a counteroffer of $900,000. National Union maintained its offer of $200,000. On August 16, Flores reduced his demand to $675,000. National Union maintained its offer of $200,000 (Br. Exh. 28, 39).

In July 2018, a few weeks before trial, Acker & Whipple sent National Union a pre-trial report that estimated the verdict range to be between $200,000 and $300,000 with a 25% chance of a defense verdict (*id.* at Exh. 36). Flores reduced his offer to $600,000 at this point, which National Union rejected (Opp. Exh. O).

Trial began on August 13. On August 15, Flores made an offer of $300,000. National Union rejected the offer and maintained that it would not go above $225,000. On August 22, the jury returned a verdict against Anderson Hay for $3.5 million (Br. Exh. 39, 41, 46).

Standing in the shoes of Anderson Hay, Houston Casualty asserts National Union unreasonably refused to settle the underlying action within its policy limits and accordingly alleges the following claims for relief: (1) equitable subrogation, (2) unjust enrichment, and (3) declaratory relief (Compl. ¶¶ 24–49). Defendants now move for summary judgment as to all claims. This order follows full briefing. Pursuant to our local civil rule 7-1(b), this order finds plaintiff's motion suitable for submission without oral argument and hereby **VACATES** the December 26 hearing.

**ANALYSIS**

**1. MOTION FOR SUMMARY JUDGMENT.**

California insurance law controls here. California law provides that that an excess carrier may maintain an action against a primary carrier for wrongful refusal to settle on the theory of equitable subrogation or unjust enrichment. *Nw. Mut. Ins. Co. v. Farmer's Ins. Grp.*, 76 Cal. App. 3d 1031 (Ct. App. 1978). Because "the insured would have been able to recover from the primary carrier for a judgment in excess of policy limits caused by the carrier's wrongful refusal to settle, the excess carrier, who discharged the insured's liability as a result of the tort,

3

stands in the shoes of the insured and should be permitted to assert all claims against the primary carrier which the insured himself could have asserted." *Commercial Union Assurance Companies v. Safeway Stores, Inc.*, 26 Cal. 3d 912, 918 (1980).

An excess insurer may hold a primary insurer liable for a judgment in excess of the policy limit when the insurer has breached its implied covenant of good faith and fair dealing by unreasonably refusing to accept a settlement offer. *Commercial Union Assurance*, 26 Cal.3d at 1040. An insurer breaches its duty of good faith when it refuses to settle when there is an offer that is both within the policy limits and reasonable. An offer of settlement within policy limits is reasonable when there is a substantial likelihood that a jury verdict will be beyond those limits. *Highlands Ins. Co. v. Continental Cas. Co.*, 64 F.3d 514, 517 (9th Cir. 1995). The amended California Civil Jury Instructions does not change this standard as plaintiffs contend. Although CACI 2234 does not state there needs to be a "substantial likelihood" the jury verdict will be beyond the policy limits, the case law and the "directions for use" all refer to the "substantial likelihood" standard.

The main issue then is whether there is a genuine dispute of material fact that National Union refused to settle for less than one million dollars, its policy limit, when there was a substantial likelihood the jury verdict would be greater than the limit. *First,* following the mediation in March, the mediator made a proposal of $950,000, an amount within National Union's policy limits. True, it is possible plaintiff would not have accepted the mediator's proposal, but plaintiff in fact proposed settlement amounts of even lesser amounts as time went on. The mediator's proposal provided an opportunity of settlement within policy limits which National Union spurned.

*Second,* on July 31, a pretrial Acker & Whipple email estimated the verdict to be up to $3.2 million. Although at other times during the life of the underlying action Acker & Whipple larded the record to National Union with lower estimates of the verdict, it does not change the fact that the $3.2 million verdict estimate was made while the mediator's offer within limits was pending. Although National Union and Acker & Whipple insist the email

4

never reached National Union, a jury could reasonably find otherwise or find that the information therein was verbally communicated as set forth in prior orders.

Defendants' motion for summary judgment as to all claims is **DENIED**. The December 26 hearing is **VACATED.**

## 2. ADMINISTRATIVE MOTION TO SEAL.

Plaintiff has filed an administrative motion to seal the following documents: (1) portions of the deposition transcript of Stephen Acker, (2) portions of the deposition transcript of Leslie Anne Burnet, and (3) portions of plaintiff's opposition to defendants' motion for summary judgment. The portions of these documents all refer to the July 31 email in question. For the reasons stated in the order denying reconsideration (Dkt. No. 86), the motion to seal is **DENIED.** The documents shall be filed publicly on the docket by **JANUARY 14 AT NOON** unless appellate relief is forthcoming before that date.

**IT IS SO ORDERED.**

Dated: December 18, 2019.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE